# Hale & Kilburn Manufacturing Company, Appellant, v. Norcross.

*Equity—Specific performance of contract—Parol contract—Patents—Evidence.*

A finding by the trial judge in an equity suit that an alleged parol agreement by an employee to assign to his employer certain patents for inventions which he had devised in consideration of an increase of salary, did not exist, will not be reversed, in the absence of clear error, where it appears from the record that the trial judge considered all the circumstances, and drew his conclusions after a most careful examination of the testimony; and this is the case although four witnesses may have testified to the existence of the contract, while but a single witness, the defendant, denied it.

Argued March 27, 1901. Appeal, No. 17, Jan. T., 1901, by plaintiff, from decree of C. P. No. 2, Phila. Co., June T., 1899, No. 880, dismissing bill in equity in case of The Hale & Kilburn Manufacturing Company v. William M. Norcross. Before MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

SULZBERGER, J., filed the following opinion:

This cause came on for trial on bill, answer and proofs on November 22, 1899, and was duly heard on that day and on the following day.

The plaintiff prayed for an injunction commanding defendant to assign to it certain letters patent, and also restraining the defendant from assigning to any other person the said letters patent, applications therefor or licenses thereunder.

The substantive averments on which this prayer for relief is based are as follows: That the plaintiff is a maker of car seats, that in September, 1887, it employed the defendant as foreman of its machine shop at a salary of $25.00 a week; that on January 1, 1888, his salary was increased to $1,650 per year; that on December 31, 1888, he asked for a further increase which was granted in consideration of his oral agreement with the plaintiff to exercise his best efforts and his inventive faculties for the purpose of devising new constructions and making improvements in the articles made by the plaintiff, and particularly in car seats, and that he would assign all such new constructions or improvements as he might devise or invent to the plaintiff without further consideration, for its sole benefit and advantage. That the defendant left plaintiff's employment on May 31, 1899. That of defendant's inventions during his employment he assigned to plaintiff patent No. 436,313, applied for December 12, 1899, and issued September 9, 1890, and patent No. 605,124, applied for July 23, 1897, and issued June 7, 1898. That other inventions of the defendant during his aforesaid employment have been patented for the defendant's benefit without the plaintiff's knowledge or consent as follows: Patent No. 551,326, applied for October 4, 1894, issued December 10, 1895, for reversible car seats; patent No. 610,719, applied for April 7, 1898, issued September 13, 1898, for improvement in car seats; patent No. 623,255, applied for January 11, 1898, issued April 18, 1899, for improvement in car seats; and patent No. 623,256, applied for June 20, 1898, issued April 18, 1899, for improvement in car seats. That the plaintiff has demanded the assignment of the last-named four patents tendering to defendant reimbursement for cost and expendi-

tures, but the latter refuses to assign.   That the defendant has applied for patents on other inventions made during his employment with the plaintiff and to the benefit of which by assignment plaintiff is entitled.   But that the defendant refuses to disclose to plaintiff what such inventions are.   That the defendant intends to assign the patents issued to him or grant licenses thereunder to business competitors of plaintiff.

The defendant by his answer denies the oral agreement to invent and assign on which the bill is based.   He explains that the patents by him assigned to plaintiff were for inventions made by him at the plaintiff's special request at its shop, in the time paid for by it, with its materials and with the aid of its workmen; and that the patents were applied for and assigned at the plaintiff's request and expense.

He further avers that for the other inventions and the patents therefor taken and retained in his own name he used his own time, materials and money, and that the plaintiff has no right in them.

He denies that the plaintiff ever requested an assignment of the letters patent last referred to or ever tendered reimbursement for cost and expenditures.   He further denies any present intention to sell or assign or grant licenses.

The important question of fact in dispute is whether the agreement of December 31, 1888, was made, as alleged by the plaintiff.

The claim of the plaintiff is that the agreement was oral, that it was made on a day not precisely fixed, but a little earlier than January 1, 1889, at the plaintiff's building, 48 and 50 North Sixth street, in Mr. Kilburn's office in the rear of the store, and that there were present the defendant, Henry S. Hale, Cheyney Kilburn, Artemus Kilburn and J. Warren Hale, the latter being the officers of the company.   All of these parties testified except Cheyney Kilburn, who died in 1894.

The evidence of J. Warren Hale on this particular point is:

" Mr. Norcross asked for this increase of salary, and stated that if we would give him $2,000 a year he would devote his best efforts to improving our car seats and other things manufactured by the concern, and if any patents were obtained he would assign them to the company."   The engagement was for one year from January 1, 1889.

Mr. Henry S. Hale's narrative is as follows:

" Mr. Norcross said that if we would pay him $2,000 a year, he would use his best efforts to improve our car seats and other articles of machinery, and so forth, and if he succeeded in getting up anything worthy of a patent, he would assign the same to us free of charge, or words to that effect.   We also agreed, at that time, that he wasn't to be charged for any lost time, and he was not to charge us for any overtime."   It was about Christmas time, the last days of December, 1888.

Mr. Artemus Kilburn was the superintendent of the manufacturing department, though not an officer of the company. His recollection of the conversation is as follows:

" Mr. Norcross came in and said to my brother, ' Mr. Kilburn, I want my wages raised.'   He asked him how much.   He wanted $2,000 a year.   It was agreed to pay him the $2,000 a year with the understanding that he should do his very best to make all improvements possible for our interest.   My brother said it didn't make so much difference what we paid him, if he only worked for us, and he agreed to do the very best he could, and if he made any improvement in car work, or any work about our place, worthy of being patented, he would get it patented and assign it over to us."

On cross-examination it appeared that this witness had on a prior occasion, to wit: on July 12, 1899, narrated the statement of Norcross as follows: " He said, ' Mr. Kilburn, I want $2,000 a year; then I will do the very best I can for you, if I get that money, in the way of making improvements.'"   This was all that took place.

The testimony of the defendant on this subject is as follows:

" Q. Did you ever have any conversation with any other person than Cheyney Kilburn in reference to the increase to $2,000 a year?   A. No, sir.   Q. Was he the only person there? A. Yes, sir."

The Court: " Q. Did you ever have any conversation with Cheyney Kilburn in the presence of witnesses who have been here and testified that they heard a conversation about your increase of wages to $2,000; or after you had had your talk with Cheyney Kilburn did they come in and have the thing resumed to them by W. Kilburn—did any such thing happen? A. No, sir; I was not present in that office at that time that

they state.   Q. Nor at any other time when such a conversation or anything like it happened?   A. No, sir. . . ."

The testimony of the defendant thus flatly contradicts that of four witnesses produced by the plaintiff.   There was nothing in the manner of any of the witnesses which gave the impression that any of them intended to falsify the facts.   The events described had happened about eleven years before the hearing, and the liability to error from defective memory was therefore considerable.   In coming to a conclusion as to what really happened all the circumstances must be carefully considered.

The defendant, Norcross, was originally employed by the plaintiff company in September, 1887, at the rate of $1,650 per annum, as the foreman of the machine shop.   The engagement for the plaintiff was made by its president, Cheyney Kilburn, who died before this controversy arose.   The purpose for which he was employed is definitely fixed by the fact that the defendant came to the plaintiff by answering the latter's advertisement in the Public Ledger of September 13, 1887, which was as follows: "Wanted, in a machine shop, runs all small iron work, a thoroughly experienced machinist to take charge of about twenty men.   Must possess first-class mechanical ideas, and be able to make his own tools. . . ."

On September 21, 1887, the defendant saw Mr. Cheyney Kilburn, the president, and this occurred: "I told him I could fill the position.   He asked me what wages I would want.   I told him to commence with, I would want $1,650 a year.   He said, 'We will pay you that.'"   He commenced his work on September 26.

At this point we come upon the means of testing the value of the memory of the respective witnesses.

J. Warren Hale testified positively, as if from knowledge, that the defendant was engaged in September, 1887, at $25.00 a week, and that commencing January 1, 1888, it was increased to $1,650 a year.

At the time in question the witness was secretary of the company.

Henry S. Hale, who at that time in question was treasurer of the company, testified on this subject apparently from an inspection of the records, because he says that defendant's salary in the fall of 1887, was 'according to our records, $25.00 per

week." The salary was increased on the following January to $1,650 per annum.

All this was flatly contradicted by the defendant's evidence, and yet in cross-examination no question was asked him on the subject, he was not confronted with the evidence of the records in their possession, nor was he asked in any way to qualify or explain. The reasonable inference is that after hearing his evidence the plaintiffs found that their testimony on this head was erroneous.

Of itself this might not be of the greatest importance, but, unfortunately for the plaintiff, it tends to show that one of the witnesses, J. Warren Hale, labors under an infirmity of memory and that another, Henry S. Hale, testified to the effect of records on insufficient examination and with too little care.

The third witness to the alleged agreement, Artemus Kilburn, gave an account of what happened on July 12, 1899, and another at the hearing on November 22, 1899.

On the second occasion he remembered that the defendant had said, " If he made any improvement in car work, or any work about our place, worthy of being patented, he would get it patented and assign it over to us."

On July 12, only a little more than four months before, he did not say anything about patents or their assignment.

Upon these three witnesses the plaintiffs' case rests, and such slips invite caution in the examination of their testimony.

The defendant had been employed by Cheyney Kilburn, the president of the company, as foreman of the machine shop at $1,650 a year. He was a competent and faithful man, the shop was increasing in size, and about fifteen months afterwards, about Christmas, 1888, he asked for an increase of wages to $2,000 a year. The natural thing for him to do was to address himself to the president who had employed him and who attended to such matters, and he says that he made his request of Cheyney Kilburn in the machine shop, and that it was promptly granted. That was the ordinary and probable course of events.

In contrast with this plain story the plaintiffs' evidence brings all the members of this family corporation into a conclave of some solemnity. Cheyney Kilburn, the president; J. Warren Hale, the secretary; Henry S. Hale, the treasurer; and

Artemus Kilburn, the superintendent of the factory, are alleged to have been there.   No explanation is given whether this was or was not a formal meeting of the company or its directors, nothing is said as to how the defendant came to be invited into this meeting or whether he was there uninvited, no reason is given why an employee should suddenly face the whole board to make a request which was quite in the common order of things and is usually addressed to a man's direct boss.   Moreover, the description of the interview is to the last degree vague and unsatisfactory.   No rational account is given of the order in which the persons talked nor of the words that were used.

If this was really an act done by the company or the board, the fact should have been noted in the minutes.

It was not so noted, and the only explanation given is the remark of a witness that to enter such matters would have overcrowded the minutes.   There is, however, not the slightest evidence that on any other occasion the company or the board considered an employee's claim for higher wages.   The amount of the increase was not so considerable as to take it out of the ordinary rule.

In view of all these considerations, it seems likely that the defendant is telling the story as it really happened, and that the plaintiffs' witnesses are narrating as facts impressions on their minds derived partly from knowledge gained at the time from their president, partly from an examination of the records, and partly from talking the matter over among themselves.

Their testimony, moreover, when carefully scrutinized does not mean as much as is claimed by the bill.   If we assume for a moment that the express contract averred by the bill is not proved then the relations of the parties were clearly ascertainable according to the rule laid down by the Supreme Court of the United States in 1843 in the case of McClurg v. Kingsland, 1 Howard, 202.   There it was held that if a person employed in the manufactory of another, while receiving wages, makes experiments at the expense and in the manufactory of his employer, has his wages increased in consequence of the useful result of the experiments, makes the article invented and permits his employer to use it, no compensation for its use being paid or demanded, and then obtains a patent, these facts will justify the presumption of a license to use the invention.

And the rule has been adhered to in the later cases: Solomons v. U. S., 137 U. S. 343; Dalzell v. Deuber Watch Case Mfg. Co., 149 U. S. 315.

With the requirements of this rule the defendant has more than complied. The complaint is that he has not deprived himself of all rights to inventions made by him at his own expense, in his own time and in his own place.

In order to find that a man made such an agreement as that alleged the evidence should be clear and precise. Indeed, one wonders why the plaintiff did not put in writing a contract so farreaching and important. Yet no one appears to have made even a minute or other note in writing at the time.

Again, when the words of the plaintiff's witnesses are fairly interpreted, they seem to import that the defendant promised to devote his best efforts to their work, and if patents resulted, he would assign them to the company. Such a promise as this is fully performed when the plaintiffs get all the patents resulting from the defendant's continuous labors at their factory.

The conduct of the plaintiff throws some further light on the matter.

It appears that one of the patents under discussion was taken out on December 10, 1895, and that the plaintiffs knew about it soon after, and yet took no steps to assert the right which they now claim. After the defendant had given notice that he would leave, the plaintiffs offered him a sum of money for one of these patents in dispute, they say $1,000, he says $5,000.

Though the plaintiffs say that their inaction, as well as their action, in this matter was attended with protests of their right to have assignments, we cannot ignore the significance of the facts. The plaintiffs' claim, in short, looks much like an afterthought developed by the defendant's leaving their employment and the fear that he would go with a rival house which might profit by his work.

We are not satisfied that the contract as averred in the bill has been proved, and therefore think that the bill should be dismissed at the costs of the plaintiff.

And now, this tenth day of August, 1900, it is ordered that the prothonotary notify the parties or their counsel of the filing of this opinion, and if no exceptions are filed thereto

within twenty days from September 1 next, a decree will be entered in accordance herewith.

The court entered a decree dismissing the bill.

*Error assigned* was in dismissing the bill.

*John G. Johnson,* with him *Ernest Howard Hunter,* for appellant.—The immense preponderance of testimony was in favor of appellant's contention: Mumpton v. The Dale, 46 Fed. Repr. 670; Townsend Mfg. Co. v. Foster, 51 Barbour, 346; Farley v. Hill, 150 U. S. 576; Crawford v. The Buffalo, 6 Fed. Cas. 773; Katzenbach v. Holt, 43 N. J. Eq. 542; Kentner v. Kline, 41 N. J. Eq. 422.

*Charles A. Chase,* with him *Charles Lex Smyth,* for appellee. —The court will not reverse the lower court upon a question of fact except for clear and manifest error: Wolf v. Augustine, 197 Pa. 367; Brotherton v. Reynolds, 164 Pa. 134; Stockett v. Ryan, 176 Pa. 71; Com. v. Stevens, 178 Pa. 543; Hancock v. Melloy, 187 Pa. 371.

Specific performance will not be decreed in equity without clear and satisfactory proof of the contract set forth in the bill: Dalzell v. Dueber Watch Case Mfg. Co., 194 U. S. 315; Hammer v. McEldowney, 46 Pa. 334; Meason v. Kaine, 63 Pa. 335; De F. Ballou v. March, 133 Pa. 64; Wistar's App., 80 Pa. 484; Boyce v. McCulloch, 3 W. & S. 429; Russell v. Baughman, 94 Pa. 400; Logan v. Gardner, 136 Pa. 588.

OPINION BY MR. JUSTICE MESTREZAT, May 13, 1901:

This bill was filed by the plaintiff to restrain the defendant from assigning to any third person, during the continuance of the alleged contract, certain letters patent for improvements on car seats manufactured by plaintiff and which it alleges should have been assigned to it. The plaintiff also prayed that the defendant be decreed to assign the patents to it.

The agreement on which the plaintiff claims the right to have the patents assigned to it is set forth in the bill as follows: "On or about the 29th day of December, 1888, the defendant applied for a further increase of salary, and as a consideration for the said increase of salary, verbally agreed with

the plaintiff to exercise his best efforts and his inventive faculties for the purpose of devising new constructions and making improvements in the articles manufactured by the plaintiff, and particularly in car seats, and agreed to assign all such new constructions or improvements as he might devise or invent to the plaintiff, without further consideration, for its sole benefit and advantage, which agreement was duly entered into verbally by the plaintiff and defendant, and as a consideration therefor an increased salary was paid to the defendant from and since the first day of January, 1889." The defendant in his answer denied the agreement and the court below found that it had not been established by the testimony, and dismissed the bill. This is the single issue in dispute.

The learned counsel for appellant concede that ordinarily the finding of facts in an equity proceeding by the trial judge is conclusive on this court. They allege, however, that the circumstances of this case take it out of that rule. It is claimed by the plaintiff that the contract was established by the testimony of four witnesses, and was denied by a single witness, the defendant himself. The learned judge in the adjudication says : " There was nothing in the manner of any of the witnesses which gave the impression that any of them intended to falsify the facts. The events described had happened about eleven years before the hearing, and the liability to error from defective memory was therefore considerable. In coming to a conclusion as to what really happened, all the circumstances must be carefully considered." The appellant in his printed argument quotes this extract from the adjudication and argues that the finding of the judge was based on the testimony of one witness against that of four witnesses, "none of whom he finds to be untruthful," and that therefore it is within the province of this court to reverse the finding of the court below. The counsel for the appellant then proceeds to show by the testimony that the court below should have found the issue of fact in its favor.

The trial judge has discussed at length the testimony in the case and has drawn his conclusions after the most careful consideration of it. We need not attempt to sustain his decree by a discussion of the evidence. He has shown, and we think clearly so, wherein the appellant's testimony fails to sustain

its version of the alleged contract.   There is no rule requiring
a court to determine an issue solely on the number of witnesses.
Specific performance of this contract could be decreed only
after its existence had been shown by clear and precise evidence.
This standard was not attained by the testimony of the appel-
lant, in the opinion of the trial judge, and, for the reasons he
has stated at length, we agree with his conclusions.

The assignments of error are overruled and the decree is
affirmed.